IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DARYL KIRKLAND and JUDY )
KIRKLAND, )
 )
Plaintiffs, )
 )  No. 11 C 7285
vs. )
 )  Jeffrey T. Gilbert
STEVEN SIGLOVE, M.D., and DUPAGE )  Magistrate Judge
MEDICAL GROUP, LTD., Individually )
and a/b/a THE INSTITUTE FOR )
AESTHETIC SURGERY, a Corporation, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Darryl and Judy Kirkland allege that Defendant Dr. Steven Sigalove negligently performed a lipectomy procedure on Mr. Kirkland on October 30, 2009.[1] Plaintiffs also allege that, at all relevant times, Dr. Sigalove was acting as an agent or an apparent agent of Defendant DuPage Medical Group, Ltd. ("DMG"), a large, multi-disciplinary medical practice with over 300 doctors one of whom is Dr. Sigalove. This matter is now before the Court on DMG's Motion for *Ex Parte* Communications with DMG's Employees and Apparent Agents [DE#39].

With its Motion, DMG seeks permission to speak with other physicians who treated Mr. Kirkland after the lipectomy procedure performed by Dr. Sigalove outside the presence of Plaintiffs or their lawyers. DMG believes that talking to these other treating physicians, all of whom are employed by DMG but not named as defendants in this case, will assist DMG in preparing its defense to Plaintiffs' claims. Plaintiffs object to DMG's request on the ground that

---

[1] A lipectomy involves the surgical removal of subcutaneous fatty tissue from the patient. http://www.thefreedictionary.com/lipectomy (last accessed 2/24/13).

such *ex parte* conversations would invade Mr. Kirkland's physician-patient privilege with these other medical professionals.

The Court heard oral argument on DMG's motion on January 30, 2013, and denied the motion at that time, stating its reasoning on the record. This Memorandum Opinion and Order memorializes the Court's reasoning. For the reasons stated on the record and discussed below, the Court agrees with Plaintiffs that DMG's request to speak *ex parte* with Mr. Kirkland's treating physicians other than Dr. Sigalove would invade Mr. Kirkland's physician-patient privilege because those physicians are not named as defendants in this case nor do Plaintiffs say they intend to name them as defendants.

The Court recognizes that the balance it strikes here may make it more difficult for DMG to prepare its defense to Plaintiffs' claims, but it does not erect an insurmountable barrier nor impose an unreasonable burden on DMG. And that balance is necessary to preserve Mr. Kirkland's privilege with his treating professionals as this case is presently postured. Plaintiffs' current Amended Complaint, fairly construed, does not implicate the conduct of any DMG physician other than Dr. Sigalove, and Plaintiffs disavow a present intent to expand their Complaint. If that changes in the future, the Court has adequate tools at its disposal to address that situation. Moreover, as discussed below, the Court has imposed a deadline by which Plaintiffs must amend their complaint if they intend to add additional defendants so that DMG will know sooner rather than later whether it must defend the conduct of its physicians other than Dr. Sigalove in this case.

### A. Illinois Law Concerning The Physician-Patient Privilege

The parties agree that Illinois law governs this case. In Illinois, the physician-patient privilege is recognized by statute. No physician or surgeon shall be permitted to disclose any

2

information that he or she may have acquired in attending any patient in a professional character necessary to enable him or her professionally to serve such patient. *See* 735 ILCS 5/8-802. The Illinois Appellate Court, in *Petrillo v Syntex Laboratories, Inc.* 148 Ill. App. 3d 581, 102 Ill. Dec. 172, 499 N.E. 2d 952 (1st Dist. 1986), barred *ex parte* communications between defense counsel and a plaintiff's treating physician, who was not named as a defendant in a medical malpractice action, because those conferences jeopardized the sanctity of the physician-patient relationship and were against public policy.

The court in *Petrillo* grounded its holding on the fiduciary relationship between physician and patient, and the physician's ethical obligation as a member of the medical profession to safeguard patient confidences. 499 N.E.2d at 957. The Illinois Appellate Court concluded that a patient who files suit against his physician implicitly consents to the release of his medical information through discovery methods authorized by the Supreme Court rules, but "does not, by simply filing suit, consent to his physician discussing that patient's medical confidences with third parties outside court-authorized discovery methods, nor does he consent to his physician discussing the patient's confidences in an *ex parte* conference with the patient's legal adversary." *Id.* at 959. The Illinois Supreme Court has since recognized the soundness of the rationale in the *Petrillo* decision. In *Burger v. Lutheran General Hosp.*, the Illinois Supreme Court stated, "[W]e continue to adhere to the belief that 'the rationale of the *Petrillo* court is sound.'" 198 Ill. 2d 21, 57, 102 Ill. Dec. 172, 759 N.E.2d 533 (2001), quoting *Best v. Taylor Mach. Works*, 179 Ill. 2d 367, 458, 228 Ill. Dec. 636, 689 N.E.2d 1057 (1997).

Illinois courts have held that *ex parte* conversations between attorneys for a medical clinic sued in a medical malpractice lawsuit and a plaintiff's treating physicians not named as defendants in the lawsuit violate the *Petrillo* doctrine and invade the physician-patient privilege

even though the other treating physicians are employed by the defendant medical clinic. The Illinois Appellate Court's opinion in *Aylward v. Settecase,* 409 Ill. App. 3d 831, 350 Ill. Dec. 489, 948 N.E. 2d 769 (1st Dist. 2011), is almost on all fours with this case.

In *Aylward*, the plaintiff filed a medical malpractice suit naming as defendants both his treating physician and the medical clinic that employed him. 948 N.E.2d at 770. The plaintiff alleged that the defendant physician failed to diagnose his lung cancer during the two years the plaintiff was treated at the defendant medical clinic. *Id.* During discovery, the defendants filed a motion to interview *ex parte* other physicians employed by the medical clinic who also had treated the plaintiff but were not named as defendants. *Id.* The trial court barred defendants' proposed *ex parte* communications with plaintiff's treating physicians but certified the question to the Illinois Appellate Court pursuant to Illinois Supreme Court Rule 308. *Id.* The certified question was whether defense counsel should be able to communicate *ex parte* with medical clinic employees whose actions were not the basis for liability in the plaintiff's complaint but whose conduct might be alleged to be the basis of liability for the medical clinic in the future. *Id.*

Before the trial court in *Aylward* decided the motion for *ex parte* interviews, the plaintiff amended his complaint, replacing the allegation that the defendant medical clinic was liable "through its agents servants and/or employees" with more limited language alleging that the clinic was liable because "through the conduct of [the named defendant physician], [it] undertook to render care, diagnosis, treatment and other medical services to [plaintiff] for pecuniary consideration." 948 N.E. 2d at 770. The defendant clinic argued, however, that because the plaintiff could amend his complaint again at any time to add other doctors as defendants or add claims against the defendant clinic based on those doctors' actions, it would be prejudiced if it was denied the opportunity to speak with these other physicians during its

4

investigation of the plaintiff's claims. *Id.* at 771; *see also Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 360-62, 317 Ill. Dec. 703 (2008), (a plaintiff potentially may be permitted to add additional claims after the statute of limitations period has expired if they bear "sufficiently close relationship" to the original claims).

The Illinois Appellate Court held that the mere possibility that the medical clinic could be held liable based on the conduct of the plaintiff's treating physicians who were employed by the medical clinic but not then named as defendants in the plaintiff's malpractice lawsuit was not sufficient to justify an invasion of the plaintiff's doctor-patient privilege with those non-defendant, treating physicians. *Aylward*, 948 N.E. 2d at 773-74. The plaintiff's amendment of his complaint to limit the basis for the alleged liability of the medical clinic in that case indicated the plaintiff's current intent was not to expand his claims beyond those pled. *Id.* The possibility that the plaintiff would change his mind and bring additional claims in the future was not strong enough to undercut the sanctity of the physician-patient privilege. *Id.* The Appellate Court held that "unless and until the actions of [additional employees] are alleged to be the basis for plaintiff's injuries, [defendant] cannot engage in *ex parte* communication with them" consistent with the teaching of the *Petrillo* doctrine. *Id.* at 774.

### B.  The Illinois Appellate Court's Rationale In *Aylward* Is Persuasive Here

The *Aylward* case is on point here. DMG attempts to distinguish that case arguing that Plaintiffs have not amended their complaint to eliminate all possibility that DMG could be held liable for the actions of Mr. Kirkland's other treating physicians employed by DMG. DMG also argues that language in Plaintiffs' current Amended Complaint could be interpreted as holding open the possibility that Plaintiffs are alleging that DMG physicians other than Dr. Sigalove

were negligent or contributed to Mr. Kirkland's injuries. Neither of these attempts to distinguish *Aylward* from this case holds water, however, in the Court's view.

First, Justice Gordon writing for the Illinois Appellate Court in *Aylward* recognized that the plaintiff in that case still could try to change his theory by amending his complaint in the future. 948 N.E. 2d at 774. Justice Gordon stated that it was not a foregone conclusion that the trial court would allow the plaintiff to do so and if the trial court did allow such an amendment, it also had the discretion to allow the defendant medical clinic a reasonable time to take discovery on the new claims. *Id.* Similarly, as discussed below, by setting a date now by which Plaintiffs must seek leave to add additional defendants if they desire to do so, this Court can exercise control over, and assess the impact of, adding additional parties as discovery proceeds and the parties prepare for trial.

Second, fairly read, Plaintiffs' Amended Complaint in this case alleges that DMG is liable based solely on the conduct of Dr. Sigalove on October 30, 2009. In their response to DMG's motion, Plaintiffs state: "Plaintiffs do not allege negligence of any DMG employees other than the named Defendant, Dr. Sigalove, relating to treatment for injuries cause [sic] by the October 30, 2009, liepctomy [sic]. . . . None of the physicians that the Defendant seeks to speak to ex parte were responsible for or participated in the alleged negligent procedure." Plaintiffs' Response [DE#43], at 4-5. This is about as clear a statement as Defendants could ask for that Plaintiffs' Amended Complaint is centered on the lipectomy procedure performed by Dr. Sigalove on October 30, 2009, and upon no other medical treatment provided to Mr. Kirkland by any other DMG physician.

In addition, the Physician's Report attached to Plaintiffs' Amended Complaint expresses an opinion only as to Dr. Sigalove's conduct on October 30, 2009. Plaintiffs' Amended

Complaint [DE#9-2], Ex. B. Accordingly, as presently postured, Plaintiffs convincingly have established that they are not seeking to impose liability upon DMG for the conduct of any physician employed by DMG other than Dr. Sigalove who may have treated Mr. Kirkland after the October 30, 2009 lipectomy procedure.

There is some broad, boilerplate language in Count III of Plaintiffs' Amended Complaint to the effect that DMG is liable because DMG "through its agents, servants and employees, was guilty of one or more of the following careless and negligent acts and/or omissions: . . . (b) Failed to recognize the harm caused by Plaintiff's colon being perforated. . . (c) Failed to properly respond to the harm created by the surgical misadventure. . . [and] (e) Failed to appropriately follow up with the patient after the procedure. . . ." Plaintiffs' Amended Complaint [DE#9], at § 3. DMG argues that these allegations are broad enough to sweep within their scope the conduct of DMG physicians who treated Mr. Kirkland on and after November 2, 2009, when he went to the emergency room at Central DuPage Hospital complaining of shortness of breath, fatigue, pain, fever and chills. *See* DMG's Motion for *Ex Parte* Communications [DE#39], at 2. Mr. Kirkland subsequently was admitted to the hospital as a patient of DMG and received treatment from DMG physicians other than Dr. Sigalove until he was discharged on November 26, 2009. *Id.*

Plaintiffs, however, disavow any intent that these broad allegations are intended to encompass within their malpractice action the conduct of any physician employed by DMG other than Dr. Sigalove. The Court, therefore, declines to read more into these allegations in Plaintiff's Amended Complaint than Plaintiffs themselves say they meant by them. As in *Aylward,* the mere possibility that Plaintiffs might change their minds in the future is not enough to justify the abrogation of Mr. Kirkland's privilege with his treating physicians who are not

7

named as defendants in this case and whose treatment of Mr. Kirkland is not the stated basis for his malpractice claims against DMG. DMG has means to defend itself with the information that it already has within its possession in Mr. Kirkland's medical records and through the discovery procedures permitted by the Federal Rules of Civil Procedure without conducting *ex parte* interviews with Mr. Kirkland's treating physicians whose conduct, at least as this case is presently plead, are not alleged to give rise to any liability on the part of DMG.

In fairness, however, and to protect DMG from potential prejudice should the nature or shape of Plaintiffs' claims change in the future, the Court believes it is appropriate to set a date by which Plaintiffs must amend their complaint to add additional claims or defendants if they are going to do so. Accordingly, Plaintiffs have sixty (60) days from the January 30, 2013 hearing in this matter, or until March 29, 2013, to amend their complaint or add additional parties before trial if they intend to do so. If Plaintiffs can show that the state of their fact investigation through discovery or otherwise in this case is insufficient for them to decide whether or not to amend their complaint by that date, the Court would entertain a motion to extend the date upon a showing of good cause. Absent such a showing, however, the Court believes that setting a date to amend the complaint strikes an appropriate balance between DMG's legitimate interest in defending itself against Plaintiffs' claims and Mr. Kirkland's right to preserve his privilege with his treating physicians.

### C. DMG's Fiduciary Duty and Due Process Arguments

DMG argues -- without citation to any authority -- that physicians employed by DMG who provided medical care to Mr. Kirkland but are not now named as defendants owe a fiduciary duty to DMG as shareholders of the corporation, which would include not subjecting the corporation to possible legal exposure. The implication, apparently, is that prohibiting those

physicians from communicating *ex parte* with DMG in a way that could assist DMG to defend against Plaintiffs' claims will cause those physicians to breach their fiduciary duty to the corporation. DMG also argues -- again without citing any authority -- that principles of due process and fundamental fairness demand that it be allowed to communicate *ex parte* with these non-defendant physicians. The Court seriously doubts that these arguments could have been supported with controlling or even persuasive legal precedent if DMG had decided to attempt to do so. The fact that it did not develop these arguments, however, is enough for this Court to decline to consider them in any substantive way. *See On-Site Screening, Inc. v. United States*, 2010 WL 3025039, at *5, nt.5 (N.D. Ill. 2010); *Cook v. Illinois Dept. of Corrections*, 2011 WL 5520436, at * 3 (S.D. Ill. 2011), citing *United States v. Adams*, 625 F.3d 371, 378 (7th Cir. 2010) (failing to develop argument in a meaningful way waives argument); *United States v. Elst*, 579 F.3d 740, 747 (7th Cir. 2009) ("Perfunctory and undeveloped arguments as well as arguments unsupported by pertinent authority are waived.").

For the reasons discussed herein and during the January 30, 2013 hearing on DMG's motion, DMG's Motion for *Ex Parte* Communications [DE#39] is denied.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: February 26, 2013