# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARYL KIRKLAND, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 11 C 7285 |
| v. ) | |
| ) | Jeffrey T. Gilbert |
| STEVEN SIGALOVE, et al., ) | Magistrate Judge |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Daryl and Judy Kirkland (collectively "Plaintiffs") bring this personal injury action against Defendants Steven Sigalove, M.D. and DuPage Medical Group, Ltd., d/b/a The Institute for Aesthetic Surgery (collectively "Defendants"), alleging, *inter alia*, that Defendants committed medical malpractice in the course of performing suction-assisted lipectomy of Daryl Kirkland's ("Daryl's") abdomen, flanks, and lower back, resulting in injury to Daryl's colon. Am. Compl., ECF No. 9. Trial is set for February 17, 2015 through February 27, 2015. ECF No. 73. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[1]

Currently before the Court is Plaintiffs' Motion *in Limine* #1, which seeks to bar the testimony of Dr. Sean P. Barnett, whom Defendants have retained as an expert. Pl.'s Mot. Lim., ECF No. 79. For the reasons set forth below, Plaintiffs' Motion *in Limine* #1 (ECF No. 79) is granted.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1 for all proceedings, including entry of final judgment. ECF No. 20.

1

## LEGAL STANDARD

1. **Motions *in Limine***

Trial courts have broad discretion in ruling on evidentiary issues before and during trial. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions *in limine* are intended "to avoid the delay and occasional prejudice caused by objections and offers of proof at trial." *Wilson v. Williams,* 182 F.3d 562, 566 (7th Cir. 1999). In addition, "the prudent use of the *in limine* motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury." *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

The Court will grant a motion *in limine* only where the evidence is clearly inadmissible for any purpose. *See id.* (a motion *in limine* "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissable [sic] for any purpose"). Rulings on motions *in limine* are "subject to change when the case unfolds[.]" *Luce*, 469 U.S. at 41; *see also Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 565 (7th Cir. 2006). Indeed, "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce,* 469 U.S. at 41-42. Some evidentiary submissions, however, cannot be evaluated accurately or sufficiently prior to trial. *Jonasson*, 115 F.3d at 440. "In these instances, it is necessary to defer ruling until during trial, when the trial judge can better estimate its impact on the jury." *Id.*

2

## 2. Admissibility of Expert Testimony

Rule 702 of the Federal Rules of Evidence, as interpreted in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), governs the admissibility of expert testimony. Under Rule 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert*, the Supreme Court held that Rule 702 requires the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. To that end, the trial court serves a "gatekeeping" function to ensure that the proffered expert testimony is, in fact, both relevant and reliable. *Id.*

The district court must engage in a three-step inquiry when evaluating the admissibility of proffered expert testimony. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). First, it must determine whether the witness is qualified. *Id.* Second, it must determine whether the witness's testimony is scientifically reliable. *Id.* Third, it must determine whether the testimony has a sufficient nexus with the facts of the case such that it will assist the trier of fact in understanding the evidence or determining a fact in issue. *Id.* The proponent of the expert bears the burden of demonstrating that the expert's testimony satisfies the *Daubert* standard by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## ANALYSIS

One of Defendants' case theories is that "the injury to the colon of Daryl Kirkland occurred as a result of the traditional liposuction cannula having entered the peritoneum due to a defect in the abdominal wall with the cannula tip having come to rest adjacent to the colon." Def.'s Rule 26(a)(2) Discl., ECF No. 66-2. In support of that theory, Defendants have proffered the expert testimony of Dr. Sean Barnett, a general surgeon. Dr. Barnett essentially offers three expert opinions: (1) a laparoscopic Nissen fundoplication procedure can leave defects in the abdominal wall, which weakens the wall at the points at which the surgical ports were placed; (2) Daryl underwent a laparoscopic Nissen fundoplication procedure in 1998 which left such defects in his abdominal wall; and (3) the cannula used in the 2009 liposuction procedure performed by Dr. Sigalove may have gone through one of those defective areas and, if so, he would not have known that he entered the abdominal cavity. The Court addresses each of these opinions in turn below and finds them all inadmissible.

### I. Whether the laparoscopic Nissen fundoplication procedure causes abdominal defects.

Dr. Barnett's first proffered opinion is that a laparoscopic Nissen fundoplication procedure can cause defects in the abdominal wall, which weakens the wall at the points at which the surgical ports were placed. Dr. Barnett is qualified to testify generally about the laparoscopic Nissen fundoplication procedure and abdominal weaknesses it may cause. Dr. Barnett's Rule 26(a)(2) disclosure states that his opinions "are based on [his] education, training and experience as a Board Certified General Surgeon." Def.'s Rule 26(a)(2) Discl., ECF No. 66-2. At his deposition, he confirmed that his opinions are "based on [his] experience in performing the procedure and training [and] that's it." Tr.[2] at 33:21-22, 24. This is sufficient. "An expert's

---

[2] Citations to "Tr." refer to Dr. Barnett's deposition testimony, ECF No. 79-1.

testimony is not unreliable simply because it is founded on his experience rather than on data." *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010). Indeed, "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

Dr. Barnett is a board-certified general surgeon. Tr. at 9:3. He explained that operating within the abdomen is a regular part of the practice of a general surgeon. Def.'s Rule 26(a)(2) Discl., ECF No. 66-2. He further testified that he has performed somewhere between 20 and 50 laparoscopic Nissen fundoplication procedures and explained how that procedure is generally performed. Tr. at 19:18, 34:15-23. The Court is satisfied that Dr. Barnett's experience qualifies him to testify about the laparoscopic Nissen fundoplication procedure in general and the resulting abdominal defects it may cause in the areas in which the surgeon places the surgical ports.

The Court also finds that Dr. Barnett's testimony regarding the general occurrence of abdominal weakness in the areas where ports are inserted during a laparoscopic Nissen fundoplication is scientifically reliable. Dr. Barnett explained that during the procedure, a surgeon places sharp ports through a patient's abdominal wall, which causes scar tissue to develop in the abdominal wall fascia that is inherently weaker than normal fascia. *See, e.g.*, Tr. at 34:15-23, 72:9-10. Dr. Barnett's testimony is based on his knowledge of the abdominal region and his experience performing the particular procedure. The Court is satisfied that this line of testimony based on Dr. Barnett's knowledge and experience in performing laparoscopic

5

procedures is reliable. *See, e.g., Metavante*, 619 F.3d at 761-62 (finding expert testimony reliable based on expert's experience).

Proffered expert testimony, however, must not only be reliable; it also must be relevant in the sense that it has a sufficient nexus with the facts of this case such that it will assist the trier of fact in determining an issue in the case. *Daubert* instructs that if the opinion does not relate to an issue in the case, it "is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591; *see also United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir. 2007) (expert testimony must be "factually linked to the case in order to meet Rule 702's 'helpfulness' requirement"). It is on this prong of the *Daubert* analysis that Dr. Barnett's opinion flounders.

One of Defendants' case theories is that the cannula that was used to remove abdominal fat during the 2009 liposuction procedure entered the peritoneal cavity through an existing defect in Daryl's abdominal wall. Dr. Barnett's testimony that the laparoscopic Nissen fundoplication procedure can cause abdominal defects is only relevant if Defendants can show that Daryl had such defects and that one of the cannulas Dr. Sigalove used during the liposuction procedure could have passed through one of those defects. As explained below in Sections II and III of this Memorandum Opinion and Order, Dr. Barnett cannot offer these opinions, and Defendants have not presented any other expert who can offer these opinions. As such, whether a laparoscopic Nissen procedure causes abdominal weakness has no nexus to the facts of this case and Dr. Barnett's testimony on this point is inadmissible.

## II. Whether Daryl had defects in his abdominal wall at the time of his October 2009 liposuction procedure.

Dr. Barnett's second proffered opinion is that because Daryl underwent a laparoscopic Nissen fundoplication in 1998 he must have had defects in his abdominal wall at the time of the October 2009 liposuction procedure performed by Dr. Sigalove. The Court assumes, for the

6

same reasons discussed in Section I above, that Dr. Barnett is qualified through his experience as a general surgeon to offer an opinion about the effect of a laparoscopic Nissen fundoplication procedure on Daryl's abdominal wall. But it is not enough that Dr. Barnett is qualified to speak generally about a defect. The Court must also inquire whether the reasoning underlying Dr. Barnett's opinion is reliable and whether the opinion is sufficiently tied to the facts of the case. *Myers*, 629 F.3d at 644.

The only basis for Dr. Barnett's determination that Daryl has defects in his abdominal wall is his opinion that anyone who has ever had a laparoscopic procedure necessarily must always have some abdominal wall defect at the point at which the laparoscopic port was inserted. Tr. at 49:6-10. Defendants argue that Dr. Barnett's experience in performing the procedure and his general knowledge of the abdomen permit him to make this sweeping conclusion. Def.'s Resp. Br., ECF No 80. Even if Dr. Barnett is qualified to testify in such generalities, though, he does not and cannot tie his general conclusion that Daryl must have had abdominal defects to the actual facts of this case. Again, whether Daryl had abdominal defects only matters in this case if those defects caused his abdominal wall to be weak enough to allow a cannula to pass through the fascia and into the peritoneum in the area where Dr. Sigalove performed the liposuction procedure. Dr. Barnett's testimony in that regard is unreliable and not grounded in any scientific process. It therefore fails the second *Daubert* prong.

As the Seventh Circuit has noted, even "[a] supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are based upon some recognized scientific method and are reliable and relevant under [*Daubert*]." *Lewis*, 561 F.3d at 705 (quoting *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999)). "The goal of *Daubert* is to assure that experts employ the same 'intellectual rigor' in their courtroom testimony as would

be employed by an expert in the relevant field." *Jenkins*, 487 F.3d at 489 (citing *Kumho Tire*, 526 U.S. at 152). Accordingly, "the law demands more than a casual diagnosis that a doctor may offer a friend or acquaintance outside the office about what could be causing his aches and pains." *Myers*, 629 F.3d at 644. To be admissible, the proponent of an expert opinion must demonstrate that the opinion "[is] grounded in the scientific process" and is not "merely a subjective belief or unsupported conjecture." *Lewis*, 561 F.3d at 705 (citations omitted); *see also Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) ("[A] district judge asked to admit scientific evidence must determine whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist.").

Dr. Barnett admitted he cannot specify how much weaker any damaged portion of Daryl's abdominal wall would be than normal, undamaged fascia. Tr. at 38:12-14 (Q: "How much weaker?" A: "I don't know. I don't have a quantitative."); 39:8-11 (Q: "In terms of how to quantify that [weakness], you can't say to a reasonable degree of any certainty, correct?" A: "Correct."). He cannot point to any literature quantitating scar tissue weakness. *Id.* at 38:17-22 ("I believe there are reports of people trying to quantitate how much weaker the fascia is after an incision versus before an incision. I am not aware of there being any literature to suggest the strength of the fascia versus untouched fascia in laparoscopic cases."). He has no experience testing how much force is required to penetrate the abdominal wall in an area that has a defect. *Id.* at 70:18-19 ("I can't recall any scenario where I am placing a port through a defect, a known defect."). When asked how much force it takes to push a cannula through an abdominal wall that has no defect versus an abdominal wall that has a defect, Dr. Barnett admitted, "I can't really speak to it . . . [A]ll I can say is it's less than what it would take to go through normal fascia." *Id.* at 70:6-7, 72:1-2.

8

In addition, Dr. Barnett has not seen the operative report from Daryl's 1998 Nissen fundoplication. *Id.* at 36:2-3. He does not know what size ports were used during the 1998 Nissen fundoplication and thus cannot say how large Daryl's abdominal defects might have been. *Id.* at 48:5-6. When pressed on this point, the best Dr. Barnett can say is that the abdominal defects must have been "somewhere between three millimeters and bigger" because "the smallest port would be at least five millimeters, so you figure that contracts down to a certain degree, which is smaller than the actual placement of the port." *Id.* at 48:14, 18-21. This is pure speculation based on a general knowledge of the Nissen fundoplication procedure but is not supported by any data whatsoever. Moreover, even assuming the laparoscopic ports were five millimeters, Dr. Barnett could not reliably testify to the size of the defects the surgery would leave in the abdominal wall. By what degree does the scar tissue "contract down"? What methodology did Dr. Barnett use to determine that degree? He does not specify. This sort of "talking off the cuff" is not scientifically reliable methodology. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000).

Dr. Barnett's opinion suffers still another flaw. Dr. Barnett could not say with any certainty how many ports were used during Daryl's 1998 procedure or where those ports were placed. He does not know the particular location of any abdominal defects. He can instead testify only in generalities. *See* Tr. at 42:17-19 ("So, again, I don't have the op report to know for sure [where the ports were placed], but I know in general where port sites are usually placed."). As a result, while he states that he "believe[s]" a port was placed "close" to the area that was injured during Daryl's liposuction, he cannot specify what "close" actually means. *Id.* at 46:16-20 ("Within – I don't know. I can't give you an idea without knowing where exactly the gentleman placed the port. Even if you did have an op report, I couldn't tell you how close it

9

would be within inches of that area. It's just an area."). Dr. Barnett's testimony is based entirely on a general understanding of where laparoscopic ports are usually placed with no hint at all as to where the ports were placed in this particular case. This is insufficient. *See, e.g., Wintz v. Northrop Corp.*, 110 F.3d 508, 514 (7th Cir. 1997) (rejecting toxicologist's expert testimony where toxicologist's methodology was "based less on a scientific understanding of the specific [facts] and more on merely a general understanding of bromide, with only unsupported speculation having been used to relate the general knowledge to the facts").

In short, Dr. Barnett has offered no basis whatsoever for his opinion that a liposuction cannula may have passed through defects in Daryl's abdominal wall except for the fact that at one point, eleven years prior to the liposuction, Daryl underwent a laparoscopic procedure and that procedure somewhat weakened Daryl's abdominal wall in certain places. Dr. Barnett's opinion is nothing more than an "inspired hunch" that lacks any scientific reliability. *Rosen*, 78 F.3d at 319. The Seventh Circuit has made clear that "an expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* (quoting *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chi.*, 877 F.2d 1333, 1339 (7th Cir. 1989); *see also United States v. Noel*, 581 F.3d 490, 497 (7th Cir. 2009) (barring expert testimony where expert "in essence, told the jury nothing more than, 'I am familiar with the definition of child pornography, and this meets that definition because I said so.'"); *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651 (1998) (finding an expert's testimony unreliable in part because, while the expert testified that Styrofoam cups are more flexible when holding hot beverages, he could not specify how much more flexible).

As Dr. Barnett cannot reliably testify to the size, location, composition, nature, scope, or any other details about any possible abdominal defects Daryl might have had, his opinion that

10

Daryl in fact had these defects is inadmissible. In other words, whether Daryl had abdominal defects is not helpful to the jury unless Defendants can offer more detail about the nature of the defects and how the defects may have come into play in connection with the injury to Daryl's colon. Defendants cannot do so. Accordingly, even if Daryl did have abdominal defects at the time of his 2009 liposuction, Defendants have not established a sufficient nexus between these defects and the injury to Daryl's colon, and thus Dr. Barnett's opinion in this regard is inadmissible.

Defendants argue that their plastic surgery expert, Dr. Gutowski, provides the nexus by which Dr. Barnett's opinion will be tied to the facts of this case. According to Defendants, Dr. Gutowski will testify that an abdominal wall weakness played a role in the injury to Daryl's colon because one of the liposuction cannulas was able to pass through an abdominal defect and into the peritoneum. Def.'s Resp. 4, ECF No. 80. Dr. Gutowski, however, cannot offer this opinion.

Rule 26(a)(2) of the Federal Rules of Civil Procedure requires that an expert report must disclose, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Dr. Gutwoski's Rule 26(a)(2) disclosure does not mention the 1998 laparoscopic Nissen fundoplication, any defects or weaknesses in Daryl's abdominal wall resulting from the placement of surgical ports during that procedure, or offer any opinions as to how a cannula may have touched or perforated the colon by passing through such a defect in the abdominal wall. Defendants' counsel acknowledged as much during Dr. Gutowski's deposition. Gutowski Tr. 119:10, ECF No. 80-1. Pursuant to Rule 37(c)(1), Dr. Gutowski would not be able to offer testimony that is so far afield from his Rule 26(a)(2) disclosure. Fed. R. Civ. P. 37(c)(1). As such, Defendants cannot establish that Dr.

Barnett's opinion is tied to the facts of this case or any other expert's testimony. It is therefore inadmissible.

### III. Whether a cannula used in the 2009 liposuction procedure performed by Dr. Sigalove may have gone through a defective area in the abdominal wall.

Dr. Barnett's third proffered opinion is that a cannula used in the 2009 liposuction procedure performed by Dr. Sigalove entered the peritoneum through a defective area in the abdominal wall. Dr. Barnett is not qualified to offer this opinion. It is true that "courts often find that a physician in general practice is competent to testify about problems that a medical specialist typically treats." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). The issue, however, "is not whether an expert witness is qualified in general, but whether his 'qualifications provide a foundation for him to answer a specific question.'" *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)); *see also Myers*, 629 F.3d at 643-44 ("This is a scenario similar to what many plaintiffs face in toxic tort cases: an expert can testify that a chemical can cause the plaintiff's malady but he may not be qualified to testify that *this* chemical caused *this* particular plaintiff's malady.") (emphasis original); *Erickson v. Baxter Healthcare, Inc.*, 131 F.Supp.2d 995, 999 (N.D. Ill. 2001) ("To allow doctors to testify about specific statistical or medical questions and base their testimony only on general experience would be to say that doctors are qualified experts on every medical subject merely because they wear white coats.").

Dr. Barnett states that a liposuction cannula entering the peritoneum "would require unusual and tremendous force by any surgeon due to the strength of the fascial layers of the abdominal wall." Def.'s Rule 26(a)(2) Discl., ECF No. 66-2. Yet Dr. Barnett has never used a liposuction cannula. Tr. at 71:18. He has never seen a liposuction cannula. *Id.* at 74:22-23,

12

75:4-6. His only familiarity with the liposuction cannula at issue is viewing a photograph of it on a website. *Id.* at 25:4-6. Nor has Dr. Barnett performed a liposuction surgery. *Id.* at 17:17.

Indeed, Dr. Barnett admitted that he could not speak to how much force would be required for a plastic surgeon to get through an abdominal defect because he places ports through a patient's abdominal wall at a 90 degree angle, whereas "[t]he plastic surgery procedure in question uses generally tangential technique where they are not trying to penetrate the abdominal wall." *Id.* at 70:7-11. When asked to specify the amount of force that would be required for a liposuction cannula to penetrate a weakness in the abdominal wall, Dr. Barnett could not provide an answer. *Id.* at 72:1-2. Dr. Barnett may be qualified to speak about certain medical evidence, but he is not qualified to testify that a surgical instrument he has neither used nor seen could pass through a defect in the abdominal wall in the course of a surgery he has never performed.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion *in Limine* #1 (ECF No. 79) is granted. It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: January 16, 2015